UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Chapter 7 |
| THINKENGINE NETWORKS, INC. ) | |
| ) | Case No. 09-40115-HJB |
| Debtor ) | |

**TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING
PRIVATE SALE OF THE DEBTOR'S ASSETS
FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES
AND FOR THE ASSUMPTION AND ASSIGNMENT OF LEASE**

To the Honorable Henry J. Boroff, United States Bankruptcy Court Judge for the District of Massachusetts:

Anne J. White, the duly appointed Chapter 7 Trustee (the "Trustee") of ThinkEngine Networks, Inc. (the "Debtor"), respectfully requests authority from this Court pursuant to 11 U.S.C. §363(b)(1) and (f) and § 365, Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1 to sell, at private sale, all of the estate's right, title and interest in the assets of the estate consisting of tangible and intangible property all as more particularly described herein below and to assume and assign the Debtor's leasehold interest in a certain lease to a portion of the premises located at 3 Corporate Drive, Danbury, CT (the "Motion To Sell"). By this Motion To Sell, the Trustee seeks authority to sell the Debtor's assets free and clear of all liens, claims, encumbrances and interests. The Trustee has received an offer to purchase assets for the sum of $1,400,000.00 in cash from Innovative Systems LLC ("Innovative"). The terms of the private sale

of assets to Innovative are described herein. In support of this Motion, the Trustee represents as follows:

## Background

1. On January 14, 2009 (the "Petition Date"), the above-referenced debtor filed a voluntary petition for relief under the provisions of Chapter 7 of the Bankruptcy Code (11 U.S.C. Section 101 et seq.).

2. On January 15, 2009, the Trustee was appointed Chapter 7 Trustee by the United States Trustee for the District of Massachusetts, and the Trustee continues to serve as Chapter 7 Trustee.

3. The Trustee has ascertained that the Debtor's business consists of the development, assembly, installation and servicing of two product lines which are utilized by the telephone and cable communications industry to perform certain distinct telephone functions. One product line, known as MCIAS or the CX Series, consists of units that are currently installed at certain telephone companies or cable company facilities and are utilized to furnish caller announcements (such as, for example, "this number has changed, the new number is ..."). The CX Series or caller announcement product line was developed, assembled, installed and maintained by the Debtor's Connecticut division located at 3 Corporate Drive, Danbury, Connecticut and was formerly known as Cognitronics, Inc. (the "CT Division or CT Assets").

The other product line, known as the VSR series, consists of units that are installed at facilities associated with audio conferencing services and are utilized to permit telephone conferencing. The VSR Series or telephone conferencing

product line was developed, assembled, installed and maintained by the Debtor's Massachusetts division located at 100 Nickerson Road, Marlborough, Massachusetts (the "MA Division or MA Assets"). (A more detailed description of the Debtor's assets is attached hereto as Exhibit A.)

### Applicable Leases For Debtor's Premises

4. The MA Division occupies premises at 100 Nickerson Road, Marlborough, MA which are the subject of a lease dated June 20, 2006, as amended, between the Debtor and Glenborough Fund IX, LLC (the "MA Lease"). The MA Lease commenced on June, 2006 and expires on August 31, 2009. A copy of the MA Lease is available from the Trustee upon request.

5. The CT Division occupies premises at 3 Corporate Drive, Danbury, CT which are the subject of a lease dated April 30, 1993, as amended, between the Debtor and 3 Corporate Drive, LLC (the "CT Lease"). The term of the CT Lease commenced on April 1993 and expires on October 31, 2009. A copy of the CT Lease is available from the Trustee upon request.

### Encumbrances

6. As set forth in the Debtor's Petition, Schedule D, the Debtor asserts that Vencore Solutions LLC ("Vencore") is the sole secured creditor of the Debtor. The Debtor's Petition lists the indebtedness at $1,048,618.16. The Trustee has requested and Vencore has submitted support documentation regarding the validity of its secured position and asserts the total owed to Vencore as of the Petition Date was $1,060,288.12 with ongoing interest charges at the rate of $489.15 per diem.

## Marketing Of Assets

7.     The Trustee has undertaken an investigation into the nature and value of the assets of this case by, among other things, making inquiry of the Debtor's principal and various Debtor personnel regarding the assets; inspecting the Debtor's premises located in Marlborough, Massachusetts and Danbury, Connecticut; reviewing Debtor records regarding the assets; reviewing previous proposals for the purchase of the Debtor's assets; and meeting with competitors and prospective purchasers.

8.     The Trustee has been assisted in this investigation by the financial, technical, and analytical services furnished to the Trustee by the Trustee's accountants, Verdolino & Lowey, P.C., who have also inspected the hardware, software, and relevant documentation at both the MA Division and the CT Division.  In addition, the Trustee has conferred with auctioneers in order to obtain an understanding of the costs and associated risks of liquidation.

9.     Based upon an investigation of the Debtor's operations as described above, the Trustee ascertained that a prompt sale of the Debtor's assets is necessary in order to generate the highest recovery for the creditors of this case.  Accordingly, the Trustee undertook a vigorous campaign, largely through telephone and email communications, to solicit offers to purchase the estate's assets.  The Trustee, with the cooperation of the Debtor and the cooperation of the sole asserted secured creditor, Vencore has identified and contacted over 15 potential purchasers.  The Trustee has shown the premises to potential purchasers.  For those potential purchasers who expressed a genuine

interest and requested additional information, the Trustee obtained written agreements of confidentiality prior to providing Debtor inventory lists and income/expense information to such potential purchasers.

### Terms Of Sale

10.    As a result of the Trustee's sales efforts, the Trustee has received multiple bids to purchase all or part of the Debtor's assets.  The Trustee has evaluated the bids and determined that the highest and best bid has been received from Innovative whose offices are located at 1000 Innovative Drive, Mitchell, South Dakota, USA .  Innovative and/or its nominee has proposed to purchase the Entire Asset, as that term is defined in Exhibit A attached hereto, from the Trustee at private sale for the total cash price of $1,400,000.00 (the "Original Offer" and/or "Purchase Price").  Innovative has allocated $300,000 of the Purchase Price to the MA Assets[1] with the balance of $1,100,000 attributable to the CT Assets[2].  As part of the purchase, Innovative proposes to assume and acquire the Debtor's interest in the CT Lease[3].  Innovative does not propose to assume and acquire the MA Lease.  Innovative has delivered to the Trustee a deposit in the amount of $140,000.00.

11.    While Innovative has made an offer to purchase the Entire Asset, Innovative acknowledges and agrees that the Trustee shall seek higher counter-offers with respect to (1) the Entire Asset, (2) the MA Assets alone, and (3) the

---

[1] The term "MA Assets" is defined in Exhibit A attached hereto.
[2] The term "CT Assets" is defined in Exhibit A attached hereto.
[3] The winning bidder for the CT Assets will assume responsibility for the CT Lease on the same day as the consummation of the sale (the "Closing Date") which shall be scheduled no later than fifteen 15 days after the Bankruptcy Court's order allowing the Motion To Sell.

CT Assets alone. In this connection, the Trustee has filed herewith Trustee's Motion To Approve Bidding Procedures Governing Proposed Sale Pursuant to 11 U.S.C. Section 363 Of Assets Of Debtor's Estate (the "Bidding Instructions Motion"). The bidding Instructions, as set forth in the Bidding Instructions Motion, are as follows:

A. The proposed sale to Innovative is a cash offer without any contingencies (other than Court approval). The closing shall be consummated within fifteen (15) days of the date that this Court authorizes the sale. This time limitation may be extended at the discretion of the Trustee to permit the consummation of the Private Sale. The balance of the Purchase Price shall be paid to the Trustee by bank check or wire transfer.

B. Any offer for the Entire Asset, the MA Assets or the CT Assets must be at least 5% higher than the Original Offer and accompanied with a deposit of 10% via bank check or wire transfer made payable to "Anne J. White, Chapter 7 Trustee of ThinkEngine Networks, Inc."

C. Any offeror must submit information to the Trustee sufficient to satisfy the Trustee in her sole discretion that offeror will be able to consummate the proposed sale as the successful bidder ("Qualified Bid" or "Qualified Bidder").

D. Any counter-offer for the Entire Asset or for the CT Assets must be in all respects identical to the Original Offer with the exception of the higher price and include the assumption of the CT Lease.

E. The Property is sold "as is" and "where is" and without any warranties or representations. The sale is free and clear of all liens, claims,

encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

F.  If the successful purchaser fails to complete the sale as provided herein, its deposit will be forfeited to the estate.  If the sale is not completed by the purchaser approved by the Court, the Trustee, without further hearing, shall have authority by Court approval of the Motion To Sell to sell the Entire Asset, CT Assets and MA Assets to the next highest bidder.

G.  The Trustee does not contemplate employing a broker at this time. Accordingly, no broker commission will be paid upon consummation of the sale.

H.  Any counter-offer for the MA Assets must be in all respects identical to the Original Offer with the exception of the higher price and that such counter-offeror shall agree to be bound by the non-compete provisions set forth in Exhibit B attached hereto.

I. If a hearing is held on the Motion To Sell, higher bids will be solicited in the following order:

>First, bids for the Entire Asset;
>
>Second, bids for the MA Assets;
>
>Third, bids for the CT Assets; and
>
>Fourth, any higher bids for the Entire Asset.

J. Innovative acknowledges and agrees that if a higher acceptable bid is received for the MA Assets, Innovative shall nonetheless be obligated to

7

purchase the CT Assets in accordance with Innovative's final bid for the CT Assets unless the Trustee receives a higher acceptable bid from another Qualified Bidder. Innovative and the Trustee acknowledge and agree, however, that Innovative shall not be obligated to purchase the MA Assets, if Innovative is not deemed to be the ultimate acceptable purchaser for the CT Assets.

K. The Trustee is seeking the highest aggregate bid. However, given the fact that Innovative shall not be obligated to purchase the MA Assets if it is not the ultimate purchaser of the CT Assets, if there are no higher bids for the MA Assets, bids on the CT Assets will need to exceed the Original Offer of $1,400,000.00.

### Approval Of Private Sale Is In The Best Interest Of The Estate

12. The Trustee represents that the sale of the Property at private sale rather than public sale is in the best interest of the estate. The Trustee has a ready and able buyer at private sale. The Trustee believes that the sale price is a reasonable value based on the efforts of the parties prior to the commencement of this case to sell the assets and the efforts and information acquired by the Trustee during the course of the Trustee's marketing of these assets. Moreover, the Trustee has not incurred costs of advertising. A public auction sale in this context may not be likely to generate a comparable market value inasmuch as various uncertainties and contingencies would tend to limit the auction participants. Further, as set forth in the Trustee's Bidding Instructions Motion, the value of the Debtor's assets decreases with the passage of time.

## Notice

13. Copies of this Motion have been served upon the United States Trustee, the secured creditor of the Debtor, the taxing authorities, and all parties having filed notices of appearance. Once the Court designates the appropriate response dates and hearing dates, the Notice Of Intended Private Sale, which has been filed herewith, shall be served upon all creditors and parties-in-interest pursuant to Fed. R. Bankr. P. 2002 and MLBR 2002-5, as well as potential purchasers and interested businesses.

14. If the Court denies this Motion, the terms and conditions hereof shall be null and void.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

1. Authorizing the Trustee, pursuant to 11 U.S.C. Sections 363 and 365, to sell the assets as herein defined at private sale pursuant to the accompanying Notice Of Intended Private Sale, free and clear of all liens, claims, encumbrances, and interests and to assume and assign the CT Lease to the Purchaser, all in compliance with the terms and provisions of the within motion;

2. Waiving the ten (10) day stay provisions of Fed. R. Bankr. P. 6004;

3. Approving the form of the proposed Notice Of Intended Private Sale to be served on all creditors, parties in interest and potential bidders for the Property with notice therein limited to twenty (20) days; and

4.  Granting such other and further relief as is just.

                                    ANNE J. WHITE,
                                    CHAPTER 7 TRUSTEE,

                                  /s/ Anne J. White
                                  Anne J. White (BBO# 524960)
                                  KLIEMAN, LYONS, SCHINDLER
                                      & GROSS
                                  21 Custom House Street
                                  Boston, MA 02110
                                  (617) 443-1000

February 10, 2009

# EXHIBIT A

## Asset Description

**DEFINITIONS**

### A. Entire Asset

All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation where ever located ("Entire Tangible Assets"); and the Debtor's intangible property[1], including but not limited to, the Debtor's interests in accounts receivable[2], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software, company website, domain name, company names, phone number, and facsimile number (the "Entire Intangible Assets,") (collectively, the Tangible Assets and Intangible Assets shall be referred to as the "Entire Asset"). The Entire Asset includes, without limitation, (1) software source code and audio files for the CX series, MCIAS series products and the VCR related products, (2) the Debtor's

---

[1] The Trustee has received approximately $84,500.00 in cash from the Debtor's bank accounts as of the Petition Date. The Trustee has deemed these funds unencumbered assets of this estate. These funds are not included in the assets to be sold herein.

[2] The Debtor's records reflect trade accounts receivable of approximately $204,000.00. Approximately $75,000.00 of these accounts receivable are attributable to the MA Division. Approximately $129,000.00 of the accounts receivable are attributable to the CT Division. Trustee has already collected approximately $74,500.00 in accounts receivable attributable to the CT Division. The Trustee has agreed to issue at least one demand letter in connection with the remaining unpaid accounts. The Trustee has agreed to turn-over to the winning bidder of the MA Division all those accounts attributable to the MA Division and turn-over to the winning bidder of the CT Division all those accounts attributable to the CT Division.

inventory and software, where ever located, for the CX series, MCIAS series and VSR related products (3) the Debtor's intellectual property including, without limitation, any patents (except as provided in Trustee's separate motion regarding patents[3]), any trademarks and any copy rights for the CX series, MCIAS series products and the VCR related products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts, (5) the Debtor's customer lists, (6) the Debtor's books and records, including without limitation, the records evidencing the Debtor's sales, services and repairs over the last 24 month period, (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties, (8) the Debtor's name and website for "Cognitronics" and "ThinkEngine Networks," (9) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets and (10) the right to assume the premises lease[4] for the CT Division.

---

[3] The Trustee shall file forthwith a motion to sell pursuant to 11 U.S.C. § 363 certain patent rights to Castwell Software, LLC of Wilmington, Delaware (the "Patent Sale Motion"). Castwell Software, LLC and the Debtor had contracted to sell the patent rights prior to the Petition Date for the total price of $250,000. The Trustee has been advised that the subject matter of these certain patents in wholly unrelated to the CT Division. The Patent Sale Motion will name the winning bidder of the MA Assets as the recipient of a license-back for the patent concerning the VSR series products. These patents are not included in the assets to be sold herein.

[4] The winning bidder for the CT Assets will assume responsibility for the CT Lease on the same day as the consummation of the sale (the "Closing Date") which shall be scheduled no later than fifteen 15 days after the Bankruptcy Court's entry of an order allowing the Motion To Sell.

### B. MA Assets or MA Division

All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation located at the MA Division at 100 Nickerson Road, Marlborough, Massachusetts ("MA Tangible Assets"); and the Debtor's intangible property, including but not limited to, the Debtor's interests in accounts receivable[5], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software, associated with the MA Division and the VSR series or telephone conferencing units (the " MA Intangible Assets,") (collectively, the MA Tangible Assets and MA Intangible Assets shall be referred to as the "MA Assets"). The MA Assets include, without limitation, (1) software source code and audio files for the VCR series products, (2) the Debtor's inventory and software, where ever located, for the VSR series products (3) the Debtor's intellectual property including, without limitation, any patents (except as otherwise provided in Trustee's separate motion regarding patents[6]), any trademarks and any copy rights associated with the VCR related products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts associated with the MA Division, (5) the Debtor's customer lists for the MA Division, (6) the Debtor's books and records for the MA Division, including without limitation, the records evidencing the Debtor's sales, services and repairs

---

[5] See Footnote 2 above.
[6] See Footnote 3 above.

over the last 24 month period for the MA Division, (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties and (8) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets.

### C. CT Assets or CT Division

11. All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation located at the CT Division at 3 Corporate Drive, Danbury, Connecticut and, including, but not limited to, the Debtor's spare parts for the CX series, MCIAS series or telephone call announcing units wherever located (the "CT Tangible Assets"); and the Debtor's intangible property, including but not limited to, the Debtor's interests in accounts receivable[7], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software associated with the CT Division and the CX series, MCIAS series or telephone call announcing units (the "CT Intangible Assets,") (collectively, the CT Tangible Assets and CT Intangible Assets shall be referred to as the "CT Assets"). The CT Assets include all company websites, domain names, all company names, all phone numbers and all facsimile numbers. The CT Assets includes, without limitation, (1) software source code and audio files for the CX series, MCIAS series products, (2) the

---

[7] See Footnote 2 above.

Debtor's inventory and software, where ever located, for the CX series, MCIAS series products (3) the Debtor's intellectual property including, without limitation, any patents, except as otherwise provided in Trustee's separate motion regarding patents[8], any trademarks and any copy rights for the CX series, MCIAS series products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts associated with the CT Division, (5) the Debtor's customer lists for the CT Division, (6) the Debtor's books and records for the CT Division, including without limitation, the records evidencing the Debtor's sales, services and repairs over the last 24 month period for the CT Division (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties, (8) the Debtor's name and website for "Cognitronics", (9) the Debtor's name, phone number and website for "ThinkEngine Networks," and (10) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets.

---

[8] See Footnote 3 above.

## **EXHIBIT B**

### **Non-Compete Provision**

If the CT Division and the MA Division are sold to separate entities, the successful purchaser of the MA Division shall agree for a period of five years commencing on the date of purchase not to, directly or indirectly, alone or as a partner, officer, director, employee or stockholder of any entity, (a) engage in any business activity nationwide which is in competition with the products or services being researched, developed, marketed, manufactured or sold by the CT Division, (b) or solicit or interfere with or endeavor to entice away any employee of the CT Division. If the MA Division Assets are sold within 5 years to a successive purchaser(s), such purchaser(s) must agree to be bound by this Non-Compete agreement until the expiration of the five year period. Nothing herein will be deemed to prohibit the MA Division from continuing to develop products and services that comprise a carrier class voice services platform that encompasses conferencing, and embedded speech recognition routing, for sale and service.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| In Re: <br><br> THINKENGINE NETWORKS, <br><br> Debtor | Chapter 7 <br><br> Case No. 09-40115-HJB |

## CERTIFICATE OF SERVICE

I, Anne J. White, hereby certify that, on this 10th day of February 2009, I served a copy of the foregoing (1) Trustee's Motion For Order Authorizing And Approving Private Sale Of The Debtor's Assets Free And Clear Of All Liens, Interests And Encumbrances And For The Assumption And Assignment Of Lease, together with a proposed form of (2) Notice Of Intended Private Sale to all appearing on the attached Service List via first-class mail, postage pre-paid, unless electronically served by the Court or via email as indicated thereon.

/s/ Anne J. White
Anne J. White (BBO# 524960)
KLIEMAN, LYONS,
SCHINDLER & GROSS
21 Custom House Street, Suite 920
Boston, MA 02110
(617) 443-1000

## SERVICE LIST

Richard King
Office of the U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608
*(Electronically served by the Court)*

Michael J. Pappone, Esq.  *Counsel to the Debtor*
Goodwin Proctor LLP
Exchange Place, 53 State Street
Boston, MA 02109-2881
*(Electronically served by the Court)*

Jeffrey D. Ganz, Esq.  *Counsel to Vencore*
Riemer & Braunstein LLP  *Solutions, LLC*
Three Center Plaza
Boston, MA 02108
*(Electronically served by the Court)*

Jennifer V. Doran, Esq.  *Counsel to Normandy Nickerson*
Hinckley, Allen & Snyder LLP  *Road, LLC*
28 State Street
Boston, MA 02109
*(Electronically served by the Court)*

Leslie Boyd, Esq.
Invention Law Group
677 120th Ave. NE Ste 2A-248
Bellevue, WA, 98005
*(Served via mail and email)*

Craig R. Jalbert
Verdolino & Lowey, P.C.
124 Washington Street, Suite 101
Foxboro, MA 02035
*(Served via mail and email)*

Roger Musick
Innovative Systems LLC
1000 Innovative Drive
Mitchell, SD 57301
*(Served via mail and email)*

MA Dept. of Revenue
Litigation Bureau/Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

2