UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In Re: ) <br> ) <br> ) <br> THINKENGINE NETWORKS, INC. ) <br> ) <br> Debtor ) <br> ) | Chapter 7 <br><br> Case No. 09-40115-HJB |

### ORDER AUTHORIZING AND APPROVING SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES AND FOR THE ASSUMPTION AND ASSIGNMENT OF LEASE

This matter came before the Court on the Trustee's Motion For Order Authorizing And Approving Private Sale Of The Debtor's Assets Free And Clear Of All Liens, Interests And Encumbrances And For The Assumption And Assignment Of Lease (the "Motion To Sell") and the Notice of Sale thereof ("Notice Of Sale"), wherein Anne J. White, the duly appointed Chapter 7 trustee (the "Trustee") of the debtor, ThinkEngine Networks, Inc. (the "Debtor") sought authority to sell all of the estate's right, title and interest in the assets of the estate consisting of tangible and intangible property, all as more particularly described herein below and to assume and assign the Debtor's leasehold interest in a certain lease to a portion of the premises located at 3 Corporate Drive, Danbury, CT (the "Motion To Sell").

Based upon the pleadings and other evidence, upon due deliberation, it is hereby:

FOUND AND DETERMINED that:

A.   On January 14, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the provisions of Chapter 7 of the Bankruptcy Code (11 U.S.C. Section 101 et seq.). On January 15, 2009, the Trustee was appointed Chapter 7 trustee by the United States trustee for Region 1, which includes the District of Massachusetts. The Trustee continues to serve as Chapter 7 trustee.

B.   Pursuant to the Motion To Sell, the Trustee seeks authority to (1) sell all of the estate's right, title, and interest in a certain two product lines as more particularly described below, and (2) assume and assign all of the estate's right, title, and interest in and to the CT Lease as defined below.

C   The first of the two product lines, known as MCIAS or the CX Series, consists of units that are utilized by telephone or cable company facilities to furnish caller announcements (such as, for example, "this number has changed, the new number is ...") and were developed, assembled, installed and maintained by the Debtor's Connecticut division which was formerly known as Cognitronics, Inc. (the "CT Division or **CT Assets**"). (A more detailed description of the CT Assets is contained in Exhibit A which is attached hereto.)

D.   The other product line, known as the VSR series, consists of units utilized for audio conferencing and telephone conferencing services and were developed, assembled, installed and maintained by the Debtor's Massachusetts division (the "MA Division or **MA Assets**"). (A more detailed description of the Debtor's MA Assets is also contained in Exhibit A.) A detailed description of the

collective assets, including the MA Assets and CT Assets (the "**Entire Asset**"), is contained in Exhibit A.

E.    Prior to the Petition Date, the Debtor had contracted to sell certain patent rights concerning the MA Division product line (the "Patent Rights"), as set forth in more detail in Exhibit A, to Castell Software, LLC of Wilmington, Delaware ("Castell") for the total price of $250,000. These Patents Rights are not included in the assets to be sold herein. The Trustee proposes to promptly file a motion pursuant to 11 U.S.C. § 363 to sell these Patent Rights to Castell (the "Patent Sale Motion") and in said Patent Sale Motion proposes to name the designee of the winning bidder of the MA Assets as the recipient of a license-back for such Patent Rights.

F.    The Trustee does not propose to transfer the Trustee's bankruptcy causes of action under 11 U.S.C. Sections 546, 547, 549 and 550 (the "Bankruptcy Causes Of Action").

G.    The CT Division occupies premises at 3 Corporate Drive, Danbury, Connecticut which are the subject of a lease dated April 30, 1993, as amended, between the Debtor and 3 Corporate Drive, LLC, formerly, the Danbury Industrial Corporation (the "CT Lease"). The CT Lease commenced on April 1993 and expires on October 31, 2009.

H.    The MA Division occupies premises at 100 Nickerson Road, Marlborough, Massachusetts which are the subject of a lease dated June 20, 2006, as amended, between the Debtor and Normandy Nickerson Road, LLC,

3

formerly, Glenborough Fund IX, LLC (the "MA Lease"). The MA Lease commenced on June, 2006 and expires on August 31, 2009.

    I.    As set forth in the Debtor's Schedule D and the Trustee's Motion To Sell, Vencore Solutions LLC ("Vencore") is the sole secured creditor of the Debtor. On February 10, 2009, Vencore filed a detailed proof of claim with the Court which is designated as Claim No. 7 on the Court's Claims Register ("Vencore's Claim No. 7"). The Trustee has examined relevant documentation in support of Vencore's Claim No. 7, including, inter alia, documents establishing Vencore's valid and perfected security interest in all of the Debtor's assets and detailed accountings establishing the balance owed for principal, interest, costs and attorney fees pursuant to the applicable loan documentation. Based on this examination, the Trustee proposes allowance of Vencore's Claim No. 7 in its entirety and payment of same at the closing (i.e. the sum of $1,060,288.12; together with additional accrued interest charges of $17,146.34; and additional legal fees and costs of secured creditor's counsel of $13,892.40, for the total sum of $1,091,326.86 as of March 11, 2009, plus per diem interest charges thereafter of $323.78 until closing).

    J.    The Trustee marketed the Entire Asset, the MA Assets and CT Assets by, among other things, soliciting interest from over 15 potential purchasers. For those potential purchasers who expressed a genuine interest and requested additional information, the Trustee obtained written agreements of confidentiality prior to providing Debtor inventory lists and income/expense information to such potential purchasers. The Trustee marketing efforts included

extensive email communications and telephone inquiries as well as on-site inspections by potential purchasers.

K. The Trustee has established sound reasons for the private sale of the Entire Asset, the MA Assets and/or the CT Assets and the proposed sale under the terms and conditions set forth in this Motion To Sell and Notice of Sale is in the best interest of the Debtor's estate.

L. Proper, timely, adequate and sufficient notice of the Motion To Sell, the Notice of Sale and all hearings held in connection therewith have been provided in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts, and no other or further notice is required or necessary.

M. Normandy Nickerson Road, LLC, the landlord for the MA Division filed a Limited Objection to the Trustee's Motion To Sell which provided, in summary, that if the sale of the MA Assets was intended to include an assumption and assignment of the MA Lease, such assumption and assignment should include the curing of any default and adequate assurance of future performance by the successful purchaser. Inasmuch as the Motion To Sell does not provide for the assumption and assignment of the MA Lease, the Limited Objection should be denied as moot. No other objection to the proposed sale was filed.

N. As a result of the Trustee's sales efforts, the Trustee received an initial offer to purchase the Entire Asset from Innovative Systems LLC whose offices are located at 1000 Innovative Drive, Mitchell, South Dakota, USA and/or

its nominee ("Innovative") for the total cash price of $1,400,000 (the "Original Offer" and/or "Purchase Price"). Innovative allocated $300,000 of the Purchase Price to the MA Assets with the balance of $1,100,000 attributable to the CT Assets. As part of the purchase, Innovative proposed to assume and acquire the Debtor's interest in the CT Lease[1]. Innovative did not propose to assume and acquire the MA Lease. Innovative delivered to the Trustee a deposit in the amount of $140,000.00. In addition, Innovative conditioned its offer such that if it was not the successful purchaser of the MA Assets, the successful purchaser of the MA Assets must execute a non-compete agreement in the form attached hereto as Exhibit B (the "Non-Compete Agreement").

O. The proposed sale to Innovative was a cash offer without any contingencies (other than Court approval). The closing was to be consummated within fifteen (15) days of the date that this Court authorizes the sale. This time limitation may be extended at the discretion of the Trustee to permit the consummation of the Private Sale. The balance of the Purchase Price was to be paid to the Trustee at the closing by bank check or wire transfer.

P. The Notice of Sale provided that any counteroffers to the Initial Offer were, among other things, required to be file with the Bankruptcy Court and served on the Trustee on or before March 6, 2009 at 4:30 P.M. Three counteroffers to the Initial Offer were timely filed. The three counteroffers are as follows:

---

[1] The Trustee proposed that the winning bidder for the CT Assets would be responsible to assume the CT Lease on the same day as the consummation of the sale (the "Closing Date") which would be scheduled no later than fifteen 15 days after the Bankruptcy Court's order allowing the Motion To Sell.

6

(1) Telesoft Technologies Limited of Dorset, UK and/or its nominee ("Telesoft") made a counteroffer in the amount of $1,155,000.00 for the CT Assets in accordance with the terms of the Notice of Sale. Telesoft provided a deposit in the amount of $115,500.00 to the Trustee in accordance with the Notice of Sale;

(2) Great America Networks Conferencing with offices at 10350 Heritage Park, Ste. 101, Santa Fe Springs, CA 90670 and/or its nominee ("Great America") made a counteroffer in the amount of $315,000.00 for the MA Assets in accordance with the terms of the Notice of Sale. Great America provided a deposit in the amount of $31,500.00 to the Trustee in accordance with the Notice of Sale;

(3) Ten Support Partners, Inc. with offices in Marlborough, Massachusetts and/or its nominee ("Ten Support") made a counteroffer in the amount of $315,000.00 for the MA Assets in accordance with the terms of the Notice of Sale. Ten Support provided a deposit in the amount of $31,500.00 to the Trustee in accordance with the Notice of Sale; and

Q. In accordance with the Notice of Sale, each of the counterofferors were qualified by the Trustee to participate at the sale before the Court.

R. At the hearing held on the Motion To Sell on March 11, 2009, the Trustee stated, and each of the bidders acknowledged, that the sale was not contingent upon financing and that if any bidder should become the successful

7

bidder for the MA Assets only (and not the successful bidder for the CT Assets) such bidder would be obligated to execute the Non-Compete Agreement.

S. The Trustee proposed that the Entire Asset, MA Assets and/or CT Assets be sold "as is" and "where is" and without any warranties or representations. The sale was proposed to be free and clear of all liens, claims, encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

T. Further, the Trustee proposed that if the successful purchaser failed to complete the sale as provided herein, its deposit should be forfeited to the estate. If the sale is not completed by the purchaser approved by the Court, the Trustee, without further hearing, seeks authority to consummate the sale of the Entire Asset, CT Assets and/or MA Assets to the next highest bidder.

U. No broker commission will be paid upon consummation of the sale.

V. At the hearing held on the Motion To Sell on March 11, 2009, the Court solicited higher bids in accordance with the Bidding Procedures set forth in the Trustee's Motion To Approve Bidding Procedures[2] in the following order:

<u>First, with respect to bids for the Entire Asset</u>:

Innovative submitted a bid and Telesoft submitted a reservation of rights to bid in the subsequent final round. After argument of counsel for Innovative, the bid of Innovative was deemed withdrawn.

<u>Second, with respect to bids for the MA Assets</u>:

---

[2] The Trustee's Motion To Approve Bidding Procedures was approved by Court order dated February 12, 2009.

8

 (1) Great America submitted a bid for the MA Assets in the amount of $651,000;

 (2) Ten Support submitted a bid for the MA Assets in the amount of $611,151;

Third, with respect to bids for the CT Assets:

 (1) Telesoft submitted a bid for the CT Assets in the amount of $1,655,000;

 (2) Innovative submitted a bid for the CT Assets in the amount of $1,205,000;

Fourth, with respect to the Entire Asset, (which bid was required to exceed the aggregate of the highest bid for the MA Assets and the highest bid for the CT Assets):

 (1) Telesoft submitted a bid for the Entire Asset in the amount of $2,657,329;

 (2) Innovative submitted a bid for the Entire Asset in the amount of $2,603,543;

W. Inasmuch as Telesoft has made the highest and best bid for the Entire Asset, Telesoft is hereby deemed to be the winning bidder for both the MA Assets and the CT Assets in the aggregate amount of $2,657,329 (the "Total Winning Purchase Price"). With respect to the MA Assets, Telesoft shall be referred to as the "Winning MA Assets Bidder." With respect to the CT Assets, Telesoft shall be referred to as the "Winning CT Assets Bidder." With respect to the Total Winning Purchase Price, Telesoft allocated $600,000 to the MA Assets

9

(the "MA Assets Purchase Price") and $2,057,329 to the CT Assets (the "CT Assets Purchase Price").

X.   Inasmuch as Innovative has made the second highest bid for the Entire Asset, Innovative is deemed the second highest bidder for both the MA Assets and the CT Assets in the aggregate amount of $2,603,543.  With respect to the MA Assets, Innovative shall be referred to as the "Second Highest MA Assets Bidder."  With respect to the CT Assets, Innovative shall be referred to as the "Second Highest CT Assets Bidder."

**Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:**

1.   That the Motion To Sell is ALLOWED, except as may be set forth below.

2.   That with respect to the **MA Assets**:

   A.   The Trustee is authorized to sell to the Winning MA Assets Bidder and/or the designee of the Winning MA Assets Bidder all of the estate's right, title, and interest in and to the MA Assets.  Such sale shall be free and clear of all liens, claims, encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

   B.   The Winning MA Assets Bidder and/or the designee of the Winning MA Assets Bidder shall pay to the Trustee, on or before March 16, 2009, the sum of $60,000 as a deposit toward the MA Assets Purchase Price (the "MA Assets Deposit").

   C.   The Winning MA Assets Bidder and/or the designee of the Winning MA Assets Bidder shall have no more than fifteen (15) days after

10

entry of this order to consummate the sale of the MA Assets by delivery of the balance of the MA Assets Purchase Price by bank check or wire funds to the Trustee (the "MA Closing Date"). At the MA Closing, the Trustee shall deliver a bill of sale with respect to the MA Assets.

D. If the Winning MA Assets Bidder and/or the designee of the Winning MA Assets Bidder shall fail to consummate the sale under the terms of this order, the Trustee shall be authorized to sell to the Second Highest MA Asset Bidder for the allocable amount of its final bid for the Entire Asset.

E. The MA Closing Date may be extended for an additional 30 days at the request of the Winning MA Assets Bidder.

F. If the Winning MA Assets Bidder and/or the designee of the Winning MA Assets Bidder fail to complete the sale as provided herein, the MA Assets Deposit shall be forfeited to the estate.

G. Commencing on the MA Closing Date, the Winning MA Asset Bidder and/or the designee of the Winning MA Asset Bidder shall be responsible for all rent and charges associated with its occupancy of the MA premises in accordance with the terms set forth in the MA Lease for the period from the MA Closing Date through its surrender of the subject premises. At the time of surrender, the Winning MA Asset Bidder and/or the designee of the Winning MA Asset Bidder shall surrender the subject premises broom clean and free and clear of debris.

11

H. Prior to the MA Closing Date, Telesoft shall notify the Trustee whether Telesoft is taking the MA Assets in its own name or in the name of a designee. That entity named by Telesoft shall be the named recipient of a license-back to certain Patent Rights pursuant to the Patent Sale Motion which will be promptly filed by the Trustee in this case.

I. The MA Assets are sold without any warranties or representations of any kind or nature, express of implied, including without limitation, warranties of merchantability or of fitness for any particular purpose, as is, where is and is without recourse in any event.

J. The MA Assets shall not include the Trustee's Bankruptcy Causes Of Action.

3. That with respect to the **CT Assets**:

A. The Trustee is authorized to sell to the Winning CT Assets Bidder and/or the designee of the Winning CT Assets Bidder all of the estate's right, title, and interest in and to the CT Assets. Such sale shall be free and clear of all liens, claims, encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

B. The Winning CT Assets Bidder and/or the designee of the Winning CT Assets Bidder shall have no more than fifteen (15) days after entry of this order to consummate the sale of the CT Assets by delivery of the balance of the Purchase Price by bank check or wire funds to the

Trustee (the "CT Closing Date"). At the CT Closing, the Trustee shall deliver a bill of sale with respect to the CT Assets.

C. If the Winning CT Assets Bidder and/or the designee of the Winning CT Assets Bidder shall fail to complete the sale as provided herein, its deposit shall be forfeited to the estate.

D. If the Winning CT Assets Bidder and/or the designee of the Winning CT Assets Bidder shall fail to consummate the sale under the terms of this order, the Trustee shall be authorized to sell to the Second Highest CT Asset Bidder for the allocable amount of its final bid for the Entire Asset.

E. On the CT Closing Date, the CT Lease shall be deemed assumed by the Trustee and shall be deemed assigned to the Winning CT Asset Bidder and/or the designee of the Winning CT Assets Bidder. Pursuant to 11 U.S.C. Section 365(k), the Winning CT Asset Bidder and/or the designee of the Winning CT Assets Bidder shall be obligated under the terms of the CT Lease commencing on and after the CT Closing Date. The Trustee shall file within thirty days an appropriate motion to pay to the CT Landlord the cure amount under the CT Lease.

F. Vencore's Claim No. 7 shall be allowed in the amount of $1,091,326.86 as of March 11, 2009, with interest accruing thereafter at the rate of 323.78 per day. This claim is secured by a perfected, first priority lien against the Debtor's inventory, equipment, and certain other personal property (but excluding the Debtor's Patent Rights and other

intellectual property). As such, upon consummation of the CT Closing, the Trustee shall pay Vencore the full amount then due under its claim in satisfaction of such claim from the proceeds of the CT Closing.

    G. The CT Assets are sold without any warranties or representations of any kind or nature, express or implied, including without limitation, warranties of merchantability or of fitness for any particular purpose, as is, where is and is without recourse in any event.

    H. The CT Assets shall not include the Trustee's Bankruptcy Causes Of Action.

4. That the consideration to be paid to the Trustee for the Entire Asset, MA Assets and/or CT Assets constitutes "fair value", and that the buyer of such Assets is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and is accordingly entitled to the protection afforded by the Bankruptcy Code to a good faith purchaser.

5. That the Court shall deem the ten (10) day stay provisions of Fed.R.Bankr.P. 6004(h) and 6006(d) waived and inoperative.

6. That the Trustee shall forthwith return, as so requested, the deposits of Innovative, Great America and Ten Support.

7. That the Trustee is authorized to execute and deliver any documents and instruments as she deems necessary and appropriate to effectuate the proposed sale.

8.  That this Court shall and hereby does retain sole and exclusive jurisdiction to determine any dispute, issue or other matter arising under this order.

Dated at Worcester, Massachusetts, this 16th day of March, 2009.

Henry J. Boroff,
United States Bankruptcy Judge

## EXHIBIT A

## Asset Description

**DEFINITIONS**

### A. Entire Asset

All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation where ever located ("Entire Tangible Assets"); and the Debtor's intangible property[3], including but not limited to, the Debtor's interests in accounts receivable[4], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software, company website, domain name, company names, phone number, and facsimile number (the "Entire Intangible Assets,") (collectively, the Tangible Assets and Intangible Assets shall be referred to as the "Entire Asset"). The Entire Asset includes, without limitation, (1) software source code and audio files for the CX series, MCIAS series products and the VCR related products, (2) the Debtor's inventory and software, where ever located, for the CX series, MCIAS series and

---

[3] The Trustee has received approximately $84,500.00 in cash from the Debtor's bank accounts as of the Petition Date. The Trustee has deemed these funds unencumbered assets of this estate. These funds are not included in the assets to be sold herein.

[4] The Debtor's records reflect trade accounts receivable of approximately $204,000.00. Approximately $75,000.00 of these accounts receivable are attributable to the MA Division. Approximately $129,000.00 of the accounts receivable are attributable to the CT Division. Trustee has already collected approximately $74,500.00 in accounts receivable attributable to the CT Division. The Trustee has agreed to issue at least one demand letter in connection with the remaining unpaid accounts. The Trustee has agreed to turn-over to the winning bidder of the MA Division all those accounts attributable to the MA Division and turn-over to the winning bidder of the CT Division all those accounts attributable to the CT Division.

VSR related products (3) the Debtor's intellectual property including, without limitation, any patents (except as provided in Trustee's separate motion regarding patents[5]), any trademarks and any copy rights for the CX series, MCIAS series products and the VCR related products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts, (5) the Debtor's customer lists, (6) the Debtor's books and records, including without limitation, the records evidencing the Debtor's sales, services and repairs over the last 24 month period, (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties, (8) the Debtor's name and website for "Cognitronics" and "ThinkEngine Networks," (9) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets and (10) the right to assume the premises lease[6] for the CT Division.

---

[5] The Trustee shall file forthwith a motion to sell pursuant to 11 U.S.C. § 363 certain patent rights to Castell Software, LLC of Wilmington, Delaware (the "Patent Sale Motion"). Castell Software, LLC and the Debtor had contracted to sell the patent rights prior to the Petition Date for the total price of $250,000. The Trustee has been advised that the subject matter of these certain patents in wholly unrelated to the CT Division. The Patent Sale Motion will name the winning bidder of the MA Assets as the recipient of a license-back for the patent concerning the VSR series products. These patents are not included in the assets to be sold herein.

[4] The winning bidder for the CT Assets will assume responsibility for the CT Lease on the same day as the consummation of the sale (the "Closing Date") which shall be scheduled no later than fifteen 15 days after the Bankruptcy Court's entry of an order allowing the Motion To Sell.

### B. MA Assets or MA Division

All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation located at the MA Division at 100 Nickerson Road, Marlborough, Massachusetts ("MA Tangible Assets"); and the Debtor's intangible property, including but not limited to, the Debtor's interests in accounts receivable[7], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software, associated with the MA Division and the VSR series or telephone conferencing units (the " MA Intangible Assets,") (collectively, the MA Tangible Assets and MA Intangible Assets shall be referred to as the "MA Assets"). The MA Assets include, without limitation, (1) software source code and audio files for the VCR series products, (2) the Debtor's inventory and software, where ever located, for the VSR series products (3) the Debtor's intellectual property including, without limitation, any patents (except as otherwise provided in Trustee's separate motion regarding patents[8]), any trademarks and any copy rights associated with the VCR related products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts associated with the MA Division, (5) the Debtor's customer lists for the MA Division, (6) the Debtor's books and records for the MA Division, including without limitation, the records evidencing the Debtor's sales, services and repairs

---

[7] See Footnote 2 above.
[8] See Footnote 3 above.

18

over the last 24 month period for the MA Division, (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties and (8) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets.

### C. CT Assets or CT Division

All of the Debtor's tangible personal property, including but not limited to, the Debtor's interests in any finished product, equipment, furnishings, fixtures, inventory, work in process, spare parts, computers, tools, test equipment, office equipment, instruments, and instrumentation located at the CT Division at 3 Corporate Drive, Danbury, Connecticut and, including, but not limited to, the Debtor's spare parts for the CX series, MCIAS series or telephone call announcing units wherever located (the "CT Tangible Assets"); and the Debtor's intangible property, including but not limited to, the Debtor's interests in accounts receivable[9], contracts, customers, customer information, customer files, pricing files, intellectual property, computer software associated with the CT Division and the CX series, MCIAS series or telephone call announcing units (the "CT Intangible Assets,") (collectively, the CT Tangible Assets and CT Intangible Assets shall be referred to as the "CT Assets"). The CT Assets include all company websites, domain names, all company names, all phone numbers and all facsimile numbers. The CT Assets includes, without limitation, (1) software source code and audio files for the CX series, MCIAS series products, (2) the

---

[9] See Footnote 2 above.

Debtor's inventory and software, where ever located, for the CX series, MCIAS series products (3) the Debtor's intellectual property including, without limitation, any patents, except as otherwise provided in Trustee's separate motion regarding patents[10], any trademarks and any copy rights for the CX series, MCIAS series products, (4) the Debtor's right to assume any licensing agreements, maintenance contracts, distribution agreements, software leases and professional service contracts associated with the CT Division, (5) the Debtor's customer lists for the CT Division, (6) the Debtor's books and records for the CT Division, including without limitation, the records evidencing the Debtor's sales, services and repairs over the last 24 month period for the CT Division (7) the Debtor's right (to the full extent such right exists) to enforce confidentiality agreements with its existing and former employees or other parties, (8) the Debtor's name and website for "Cognitronics", (9) the Debtor's name, phone number and website for "ThinkEngine Networks," and (10) the right to assume the confidentiality agreement that have or will be executed between the Trustee and potential prospective purchasers in connection with the Trustee's dissemination of information regarding the estate assets.

---

[10] See Footnote 3 above.