UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In Re: <br><br> THINKENGINE NETWORKS, INC. <br><br> Debtor | Chapter 7 <br><br> Case No. 09-40115-HJB |

**TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF CERTAIN PATENT RIGHTS**
**FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES**

To the Honorable Henry J. Boroff, Chief Judge, United States Bankruptcy Court for the District of Massachusetts:

Anne J. White, the duly appointed Chapter 7 Trustee (the "Trustee") of ThinkEngine Networks, Inc. (the "Debtor"), respectfully requests authority from this Court pursuant to 11 U.S.C. § 363(b)(1) and (f), Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1 to sell, at private sale, all of the estate's right, title and interest in certain patent rights (the "Patent Rights") all as more particularly described herein below (the "Motion To Sell"). By this Motion To Sell, the Trustee seeks authority to sell the Patent Rights free and clear of all liens, claims, encumbrances and interests. The Trustee has received an offer to purchase the Patent Rights for the sum of $250,000.00 from Castell Software, LLC ("Castell" or the "Purchaser"), the terms of which are described herein. In support of this Motion To Sell, the Trustee represents as follows:

1

## THE PARTIES

1.  The Debtor is a Massachusetts corporation with former principal offices located at 100 Nickerson Road, Marlborough, Massachusetts. The Debtor also had maintained a business location at 3 Corporate Drive, Danbury, Connecticut. The Debtor's business consisted of the development, assembly, installation and servicing of two product lines which were utilized by the telephone and cable communications industries to perform distinct telephone functions.

2.  Castell is a Delaware limited liability company with offices located at 2711 Centerville Road, Suite 44, Wilmington, DE 19808. Castell is in the business of, among other things, buying, developing, and licensing certain intellectual property and patent interests.

## BACKGROUND

3.  On January 14, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for relief under the provisions of Chapter 7 of the Bankruptcy Code (11 U.S.C. Section 101 et seq.).

4.  On January 15, 2009, the Trustee was appointed Chapter 7 trustee by the United States Trustee for Region 1 which includes the District of Massachusetts, and the Trustee continues to serve as Chapter 7 trustee.

5.  Based on investigations, the Trustee ascertained that the Debtor holds title to the Patent Rights more particularly described in Exhibit A which is attached hereto. The Trustee further learned that Castell and the Debtor had contracted to sell the Patent Rights prior to the Petition Date for the total purchase price of $250,000.00.

6.  Prior to the Petition Date, the Debtor marketed two distinct product lines, one at the Marlborough, Massachusetts location (the "MA Assets") and one at the Danbury,

Connecticut location (the "CT Assets"). The Trustee has been advised that the subject matter of the Patent Rights is related to the MA Assets, but wholly unrelated to the CT Assets.

7. On February 10, 2009, the Trustee filed a motion seeking authority to sell all of the estate's right, title and interest in the assets of the estate, including both the MA Assets and the CT Assets and including both tangible and intangible property (the "Asset Sale"). The proposed Asset Sale specifically excluded the Patent Rights which are the subject of this Motion.

8. On March 16, 2009, the Court entered an "Order Authorizing And Approving Sale Of The Debtor's Assets Free And Clear Of All Liens, Interests And Encumbrances And For The Assumption And Assignment Of Lease" which authorized the sale of estate assets and specifically excluded the sale of the Patent Rights (the "Sale Order").

9. Pursuant to the Sale Order, the winning bidder i.e. Telesoft Technologies Limited of Dorset, UK ("Telesoft") was authorized and directed to notify the Trustee as to whether Telesoft was taking the MA Assets in its own name or in the name of a designee. The Sale Order further provided that the "entity named by Telesoft shall be the named recipient of a license-back" for the Patent Rights.

10. Pursuant to the Sale Order, Teleoft designated TEN Conference Partners LLC ("TEN") as the entity to purchase the MA Assets. Thereafter, the Trustee consummated the sale of the MA Assets to TEN and duly executed a license-back of the Patent Rights to Ten (the "License-back")[1].

## TERMS OF SALE

11. The Trustee seeks authority to sell all of the estate's right, title and interest in the Patent Rights to Castell for the total cash sum of $250,000.00 (the "Purchase Price").

---

[1] Castell approved the form and substance of the License-back. A copy of the License-back is available from the Trustee upon request.

12. This proposed sale is subject to the License-back described above.

13. The Trustee has requested and the Purchaser has agreed to waive any claim against this estate including any kind of claim for distribution in this case except as provided herein. The Purchaser has requested and the Trustee has agreed to waive any claim against the Purchaser except as provided herein.

14. The sale to the Purchaser is to be free and clear of all liens, claims, encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

15. The Purchaser has delivered to the Trustee a deposit in the amount of $25,000.00.

16. The proposed sale to Castell is a cash sale without any contingencies (other than the Court's approval of this Motion To Sell). The closing shall be consummated within ten (10) days of the date that this Court authorizes the sale. This time limitation may be extended at the discretion of the Trustee to permit the consummation of the Private Sale. The balance of the Purchase Price shall be paid to the Trustee by wire transfer, bank check or certified funds. The Patent Rights are sold "as is" and "where is" and without any warranties or representations. The Trustee is soliciting higher offers according the terms described herein.

17. If the highest bidder, which is approved by the Court, fails to complete the sale as provided herein, its deposit will be forfeited to the estate. If the sale is not completed by the highest bidder approved by the Court, the Trustee, without further hearing, shall have authority by Court approval of this Motion, to sell the Patent Rights to the next highest bidder. For those bidders whose bids were not approved by the Court, the Trustee shall return their deposit.

18. The Trustee does not contemplate employing a broker at this time. Accordingly, no broker commission will be paid upon consummation of the sale.

## LIENS AGAINST THE PATENT RIGHTS

19. Vencore Solutions LLC, the sole secured creditor in this estate, has been paid in full by the Trustee. The Trustee has been advised of no encumbrances on these Patent Rights.

## APPROVAL OF PRIVATE SALE IS IN THE BEST INTEREST OF THE ESTATE

20. The Trustee represents that the sale of the Patent Rights at private sale rather than public sale is in the best interest of the estate. The Trustee has a ready and able buyer at private sale. The Trustee believes that the sale price is a reasonable value based on the efforts of the parties prior to the commencement of this case to sell the Patent Rights. Moreover, the Trustee has not incurred costs of advertising. A public auction sale in this context may not generate a comparable market value or offset the costs associated with the public sale process.

## COUNTEROFFERS

21. With respect to any higher offers or counteroffers, the Trustee requests that this Court order that, to be considered a qualified counteroffer, any counteroffer must be in an amount not less than five percent (5%) more than the Purchase Price i.e. $262,500.00. Additionally, any counteroffer, in order to be considered, must be accompanied by a wire transfer, certified check or bank check made payable to the Trustee in the amount of $25,000.00 as a bid deposit. In addition, with the exception of the price, the terms of any counteroffer must be identical to the terms of sale of the original Purchaser.

## NOTICE

22. Copies of this Motion shall be served upon the United States Trustee, the secured creditors of the Debtor, the twenty (20) largest unsecured creditors, and all parties having filed notices of appearance. Once the Court designates the appropriate response dates and hearing

dates, the Notice Of Intended Private Sale, which has been filed herewith, shall be served upon all creditors and parties-in-interest pursuant to Fed. R. Bankr. P. 2002; MLBR 2002-5 and MLBR 6004-1, as well as potential purchasers.

23. If the Court denies this Motion, the terms and conditions hereof shall be null and void.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

1. Authorizing the Trustee, pursuant to 11 U.S.C. Section 363, to sell the Patent Rights at private sale pursuant to the accompanying Notice Of Intended Private Sale, free and clear of all liens, claims, encumbrances, and interests.

2. Approving the form of the proposed Notice Of Intended Private Sale to be served on all creditors, parties in interest and potential bidders for the Patent Rights;

3. Authorizing the Trustee to execute and deliver any such documents and instruments as the Trustee deems necessary and appropriate to effectuate the sale; and

4. Granting such other and further relief as is just.

ANNE J. WHITE
CHAPTER 7 TRUSTEE

/s/ Anne J. White
Anne J. White (BBO#524960)
DEMEO & ASSOCIATES, P.C.
One Lewis Wharf
Boston, MA 02110
Tel: (617) 263-2600
Fax: (617) 263-2300

Dated: September 11, 2009

"Patent Rights" shall mean :

(a)    the provisional patent applications, patent applications and patents listed in the table below (the "*Patents*");

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| 6735213 (09/995536) | US | 5/11/2004 (11/28/2001) | Processing of telephony samples<br><br>Speciner, Michael |
| 6983246 (10/152447) | US | 1/3/2006 (5/21/2002) | Dynamic time warping using frequency distributed distance measures<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| CA2486204 | CA | 5/21/2003 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| DE60307633 (DE60307633.5) | DE | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| FR1514258 (FR03729040.0) | FR | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy Harinath K. |
| GB1514258 (GB03729040.0) | GB | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| IE1514258 (IE03729040.0) | IE | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for |

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
|  |  |  | dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| 7085717<br>(10/152095) | US | 8/1/2006<br>(5/21/2002) | Scoring and re-scoring dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| CA2484559 | CA | 5/21/2003 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| PCT/US02/038110 | WO | 11/26/02 | Processing of telephony samples background<br><br>Speciner, Michael |
| AU2002365341 | AU | 11/26/02 | Processing of telephony samples background<br><br>Speciner, Michael |
| PCT/US03/015900 | WO | 5/21/03 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| AT7290/2003 | AT | 5/21/05 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| AU2003233603 | AU | 5/23/03 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| EP1514258<br>(EP03729040.0) | EP | 8/16/2006<br>(5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping |

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| | | | Kepuska, Veton Z.; Reddy, Harinath K. |
| PCT/US03/016051 | WO | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| AU2003237914 | AU | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton K.; Reddy, Harinath K. |
| EP03736668.9 | EP | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton K.; Reddy, Harinath K. |

(b)     all patents and patent applications (i) to which any of the Patents directly or indirectly claims priority, (ii) for which any of the Patents directly or indirectly forms a basis for priority, and/or (iii) that were co-owned applications that incorporate by reference, or are incorporated by reference into, the Patents;

(c)     all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a) and (b);

(d)     all foreign patents, patent applications, and counterparts relating to any item in any of the foregoing categories (a) through (c), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances;

(e)     all items in any of the foregoing in categories (b) through (d), whether or not expressly listed as Patents below and whether or not claims in any of the foregoing have been rejected, withdrawn, cancelled, or the like;

(f)     inventions, invention disclosures, and discoveries described in any of the Patents and/or any item in the foregoing categories (b) through (e) that (i) are included in any claim in the Patents and/or any item in the foregoing categories (b) through (e), (ii) are subject matter capable of being reduced to a patent claim in a reissue or reexamination proceedings brought on any of the Patents and/or any item in the foregoing categories (b) through (e), and/or (iii) could have been included as a claim in any of the Patents and/or any item in the foregoing categories (b) through (e);

(g) all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (f), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(h) all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or any item in any of the foregoing categories (b) through (g), including, without limitation, all causes of action and other enforcement rights for

(1) damages,
(2) injunctive relief, and
(3) any other remedies of any kind

for past, current, and future infringement; and

(i) all rights to collect royalties and other payments under or on account of any of the Patents and/or any item in any of the foregoing categories (b) through (h).

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In Re:<br><br>THINKENGINE NETWORKS, INC.<br><br>Debtor | )<br>)<br>) Chapter 7<br>)<br>) Case No. 09-40115-HJB<br>)<br>) |

## NOTICE OF INTENDED PRIVATE SALE OF CERTAIN
## PATENT RIGHTS FREE AND CLEAR
## OF ALL LIENS, INTERESTS AND ENCUMBRANCES

NOTICE IS HEREBY GIVEN, pursuant to 11 U.S.C. §363(b)(1) and (f), Fed. R. Bankr. P. 2002 (a)(2) and 6004, and MLBR 2002-5 and 6004-1, that Anne J. White, the duly appointed Chapter 7 Trustee (the "Trustee") of ThinkEngine Networks, Inc. the debtor herein (the "Debtor"), intends to sell, at private sale, all of the estate's right, title and interest in certain patent rights (the "Patent Rights") all in accordance with Trustee's Motion For Order Authorizing And Approving Private Sale Of Certain Patent Rights Free And Clear Of All Liens, Interests And Encumbrances (the "Motion To Sell") filed on September 11, 2009[1].

## TERMS OF SALE

1.  The Trustee has received a cash offer in the total sum of $250,000.00 (the "Purchase Price") to purchase the Patent Rights from Castell Software, LLC, a Delaware limited liability company, with an address at 2711 Centerville Road, Suite 44, Wilmington, DE 19808 ("Castell" or the "Purchaser").

---

[1] A copy of the Motion To Sell is available from the Trustee upon request.

2. The Patent Rights are more particularly described in Exhibit A which is attached hereto.

3. As more fully set forth in the Motion To Sell, the Trustee has previously executed a license-back of the Patent Rights (the "License-back") to TEN Conference Partners LLC, a Delaware limited liability company, with an address at 67 North Quinsigamond Ave., Shrewsbury, MA 01545 ("TEN"). Accordingly, this proposed sale is subject to the License-back[2] described above.

4. The sale to the Purchaser is to be free and clear of all liens, claims, encumbrances and interests of any kind, with all valid, perfected and unavoidable liens attaching to the proceeds of the sale in their order of priority.

5. The Purchaser has paid the Trustee a deposit in the amount of $25,000.000 (the "Deposit"). The Trustee will hold the Deposit in escrow pending the closing of the sale. The balance of the Purchase Price shall be paid at the closing.

6. The Trustee has requested and the Purchaser has agreed to waive any claim against this estate including any kind of claim for distribution in this case except as provided herein. The Purchaser has requested and the Trustee has agreed to waive any claim against the Purchaser except as provided herein.

7. The proposed sale is a cash offer with no contingencies (other than the Court's approval of the Motion To Sell.) The closing shall be consummated within ten (10) days of the date that this Court authorizes the sale. This time limitation may be extended at the discretion of the Trustee to permit the consummation of the Private Sale. The balance of the Purchase Price shall be paid to the Trustee by wired transfer, bank

check or certified funds. The Patent Rights are sold "as is" and "where is" and without any warranties or representations.

8. If the highest bidder, which is approved by the Court, fails to complete the sale as provided herein, its deposit will be forfeited to the estate. If the sale is not completed by the highest bidder approved by the Court, the Trustee, without further hearing, shall have authority by Court approval of this Motion, to sell the Patent Rights to the next highest bidder. For those bidders whose bids were not approved by the Court, the Trustee shall return their deposit.

9. The Trustee does not contemplate employing a broker at this time. Accordingly, no broker commission will be paid upon consummation of the sale.

10. As set forth in the Motion To Sell, Vencore Solutions LLC, the sole secured creditor in this estate, has been paid in full by the Trustee. The Trustee has been advised of no encumbrances on these Patent Rights.

## **COUNTEROFFERS**

**PLEASE TAKE FURTHER NOTICE** that objections to the sale and/or any higher offers for purchase must be in writing, and filed with the Clerk of the United States Bankruptcy Court, 211 Harold D. Donohue Federal Bldg., 595 Main Street, Worcester, MA 01608-2076 on or before _____, 2009, at _____ P.M. (the "Objection Deadline"). A copy of any such objection or higher offer must also be served upon the Trustee, Anne J. White, at the address set forth below. Any objections to the sale must state with particularity the grounds for the objection to the sale and comply with Fed. R. Bankr. P. 9014.

---

[2] A copy of the License-back is available from the Trustee upon request.

**Through this Notice, higher offers for the Patent Rights are hereby solicited.**
Any higher offer or counteroffer must be in an amount not less than five percent (5%) more than the Purchase Price i.e. $262,500.00. Additionally, any counteroffer, in order to be considered, must be accompanied by a certified check or bank check made payable to the Trustee in the amount of $25,000.00 as a bid deposit (the "Bid Deposit") which Bid Deposit must be submitted to the Trustee on or before the Objection Deadline.
**In addition, with the exception of the price, the terms of any counteroffer must be identical to the terms of sale of the original Purchaser.**

A hearing on the Motion To Sell, the intended sale, and any objections or higher offers is scheduled to take place on _____, 2009, at _____ AM before the Honorable Henry J. Boroff, United States Bankruptcy Judge, Courtroom #4, Second Floor, 211 Harold D. Donohue Federal Bldg., 595 Main Street, Worcester, Massachusetts. In accordance with MLBR 6004-1(a)(2)(A), all parties should understand that, at the sale hearing, the Court may take evidence to resolve issues of fact.

Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection will be overruled or the higher offer stricken. If no objections to the sale or higher offers are timely filed, the Bankruptcy Court, in its discretion, may cancel the scheduled hearing and approve the sale without hearing.

At the hearing on the sale the Court may 1) consider any requests to strike a higher offer; 2) determine further terms and conditions of the sale; 3) take evidence to resolve issues of fact; 4) determine the requirements for further competitive bidding; and 5) require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror. The Trustee contemplates that at the hearing on the sale,

additional higher bids will be solicited by utilizing the sealed bid method, unless otherwise ordered by the Court. The bid floor for any open or sealed bidding will be the highest offer submitted by a qualified participating bidder.

<u>Inquiries</u>. Any questions concerning the Patent Rights or the foregoing terms and conditions should be directed to the Chapter 7 Trustee.

                              ANNE J. WHITE
                              CHAPTER 7 TRUSTEE

                              <u>/s/ Anne J. White</u>
                              Anne J. White (BBO#524960)
                              DEMEO & ASSOCIATES, P.C.
                              One Lewis Wharf
                              Boston, MA  02110
                              Tel: (617) 263-2600
                              Fax: (617) 263-2300

Dated:

"Patent Rights" shall mean :

(a)     the provisional patent applications, patent applications and patents listed in the table below (the "**Patents**");

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| 6735213 (09/995536) | US | 5/11/2004 (11/28/2001) | Processing of telephony samples<br><br>Speciner, Michael |
| 6983246 (10/152447) | US | 1/3/2006 (5/21/2002) | Dynamic time warping using frequency distributed distance measures<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| CA2486204 | CA | 5/21/2003 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| DE60307633 (DE60307633.5) | DE | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| FR1514258 (FR03729040.0) | FR | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy Harinath K. |
| GB1514258 (GB03729040.0) | GB | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| IE1514258 (IE03729040.0) | IE | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for |

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| | | | dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| 7085717 (10/152095) | US | 8/1/2006 (5/21/2002) | Scoring and re-scoring dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| CA2484559 | CA | 5/21/2003 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| PCT/US02/038110 | WO | 11/26/02 | Processing of telephony samples background<br><br>Speciner, Michael |
| AU2002365341 | AU | 11/26/02 | Processing of telephony samples background<br><br>Speciner, Michael |
| PCT/US03/015900 | WO | 5/21/03 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| AT7290/2003 | AT | 5/21/05 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy Harinath K. |
| AU2003233603 | AU | 5/23/03 | Frequency distribution of minimum vector distance for dynamic time warping<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| EP1514258 (EP03729040.0) | EP | 8/16/2006 (5/21/2003) | Frequency distribution of minimum vector distance for dynamic time warping |

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
|  |  |  | Kepuska, Veton Z.; Reddy, Harinath K. |
| PCT/US03/016051 | WO | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton Z.; Reddy, Harinath K. |
| AU2003237914 | AU | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton K.; Reddy, Harinath K. |
| EP03736668.9 | EP | 5/21/03 | Dynamic time warping of speech<br><br>Kepuska, Veton K.; Reddy, Harinath K. |

(b)    all patents and patent applications (i) to which any of the Patents directly or indirectly claims priority, (ii) for which any of the Patents directly or indirectly forms a basis for priority, and/or (iii) that were co-owned applications that incorporate by reference, or are incorporated by reference into, the Patents;

(c)    all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a) and (b);

(d)    all foreign patents, patent applications, and counterparts relating to any item in any of the foregoing categories (a) through (c), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances;

(e)    all items in any of the foregoing in categories (b) through (d), whether or not expressly listed as Patents below and whether or not claims in any of the foregoing have been rejected, withdrawn, cancelled, or the like;

(f)    inventions, invention disclosures, and discoveries described in any of the Patents and/or any item in the foregoing categories (b) through (e) that (i) are included in any claim in the Patents and/or any item in the foregoing categories (b) through (e), (ii) are subject matter capable of being reduced to a patent claim in a reissue or reexamination proceedings brought on any of the Patents and/or any item in the foregoing categories (b) through (e), and/or (iii) could have been included as a claim in any of the Patents and/or any item in the foregoing categories (b) through (e);

(g) all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (f), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(h) all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or any item in any of the foregoing categories (b) through (g), including, without limitation, all causes of action and other enforcement rights for

(1) damages,
(2) injunctive relief, and
(3) any other remedies of any kind

for past, current, and future infringement; and

(i) all rights to collect royalties and other payments under or on account of any of the Patents and/or any item in any of the foregoing categories (b) through (h).